

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: April 28, 2025**

_____
**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: CHRISTOPHER LADALE LANE** | **CASE NO. 19-50681-KMS** |
| **DEBTOR** | **CHAPTER 7** |
| **KARAM FAMILY, LLC** | **PLAINTIFF/COUNTER-DEFENDANT** |
| **V.** | **ADV. PROC. NO. 23-06003-KMS** |
| **CHRISTOPHER LADALE LANE** | **DEFENDANT/COUNTER-PLAINTIFF** |

## OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY

**THE MATTERS** before the Court are the Complaint to Determine Dischargeability of Debt under § 523(a)(2), (a)(4) and (a)(6)[1] (Adv. ECF No. 1)[2] by Karam Family, LLC ("Karam") against Christopher Ladale Lane ("Lane" or "Debtor"), Debtor in the above-styled Chapter 7 case; Debtor's Answer and Counterclaim for injunctive relief and damages for violation of § 524 (Adv. ECF No. 8); and Karam's Answer to Counterclaim (Adv. ECF No. 9). The debt is evidenced by a default judgment entered in the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade

---

[1] Unless otherwise noted, code sections refer to the Bankruptcy Code found at title 11 of the United States Code.

[2] Electronic case filing document numbers in this adversary proceeding are designated as "Adv. ECF No. ___." *See The Bluebook: A Uniform System of Citation* R. B17.1.4, at 26 (Columbia L. Rev. Ass'n et al. eds., 21st ed. 2020). Document numbers in the underlying bankruptcy case are designated as "ECF No. ___."

County, Florida on July 30, 2020 ("Default Judgment"). Adv. ECF No. 1-1 at 14-16; Adv. ECF No. 45-1 at 4-6.

Having considered the pleadings, the evidence and testimony presented at trial, and applicable law, the Court concludes that the Counterclaim should be denied and the Default Judgment given preclusive effect rendering the debt nondischargeable under § 523(a)(4).

### *Jurisdiction*

The Court has jurisdiction over the subject matter and the parties to this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (I), (O).

### *Factual and Procedural Background*

On April 10, 2019, Lane filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. ECF No. 1. Karam was not identified as a creditor in the schedules and was not listed on the matrix. ECF Nos. 4, 12. Consequently, Karam did not receive notice of the filing through the traditional channels, i.e. notice from the court or certificate of service from Lane. The case was administered as a no asset case; and on September 11, 2019, the Discharge Order was entered. ECF No. 24. The Final Decree and Order Closing Case was entered the same day. ECF No. 25.

On October 3, 2019, Karam filed suit against Lane and others ("Florida Complaint") in the Circuit Court of the Eleventh Judicial Circuit for Miami-Dade County, Florida ("Florida Court"). Adv. ECF No. 45-2 at 21. The Florida Complaint asserted claims for Civil Theft under Florida Statutes §§ 772.11 and 812.014, Fraudulent Inducement and Breach of Contract. *Id*. at 25-28.

The Florida Complaint alleged that Lane was "the managing member of Discount Miners and promoter of Bitmain S9 Antminers." Adv. ECF No. 45-2 at 23. On December 11, 2017,

Raymond A. Karam ("Raymond"), managing member and authorized representative of Karam, spoke with Lane about the purchase of 100 Antminers. Adv. ECF No. 1 at 3; Adv. ECF No. 45-2 at 23. Lane advised Raymond that if Karam wired $270,000.00 to AEF Media/Discount Miners by December 12, 2017, 100 Antminers would be delivered to Karam in January 2018. *Id*. In reliance on these representations, Karam wired the money. *Id*. But the Antminers were never delivered. Raymond made multiple inquiries regarding delivery but was provided with various excuses. Adv. ECF No. 1 at 3-4; Adv. ECF No. 45-2 at 24. On February 27, 2018, after Lane told Raymond that the Antminers were late because of the Chinese New Year, Raymond requested proof that the order was placed. *Id*. Although promising he would, Lane never provided proof that the machines were ordered. Raymond ultimately sought a refund which was also not provided. Adv. ECF No. 1 at 4-5; Adv. ECF No. 45-2 at 25.

The Florida Complaint asserts that in March 2018 Raymond placed an order for 10 Antminers directly with the Chinese manufacturer. Adv. ECF No. 45-2 at 24. The order was promptly delivered "providing further evidence of [Lane's] false statements to [Karam], as there was no shipment delays due to the Chinese New Year." *Id*. at 25. Raymond also learned that Lane had "taken the money, did not place the order, and used the money for his own benefit." *Id*.

When Lane failed to answer the Florida Complaint, the Florida Court, on July 30, 2020, entered the Default Judgment against Lane awarding $821,771.44 in damages to Karam including $810,000.00 in treble damages ($270,000.00 x 3), $10,710.00 in attorneys' fees, and $1,061.44 in costs. Adv. ECF No. 45-1 at 4-5. The Default Judgment does not contain specific findings of fact. *Id*.

On January 25, 2023, over three years after the closing of his bankruptcy case, Lane filed a motion to reopen his Chapter 7 case to amend his schedules and add a creditor "inadvertently" omitted. *See* ECF Nos. 31, 33. The case was reopened on February 3, 2023. ECF No. 38.

On February 8, 2023, Lane amended his schedule of unsecured creditors to include a judgment debt to Karam in the amount of $270,000. ECF No. 41 at 9. On the same day, Karam filed its Adversary Complaint. ECF No. 44; Adv. ECF No. 1. On April 18, 2023, Karam filed its Proof of Claim for $821,771.44 based on the Default Judgment. Cl. 1-1.

### *The Adversary Complaint and Counterclaim*

Karam's Complaint asserts that the Default Judgment is nondischargeable under § 523(a)(2)(A), (4) and (6). Adv. ECF No. 1 at 6-7. Lane answered denying the allegations of the Complaint and filing a Counterclaim asserting that the Default Judgment violates the discharge injunction in § 524. Adv. ECF No. 8 at 3. Lane requests that the Default Judgment be set aside and seeks damages for violation of the discharge injunction and to protect the authority of the Court. *Id*. at 4-5.

### *Denial of Summary Judgment Motions*

Both parties moved for summary judgment on the allegations in the Adversary Complaint. Adv. ECF No. 38 at 1. But neither party sought summary judgment on the Counterclaim. *Id.* at 2. Denying the summary judgment motions, the Court found that "[r]uling on the Complaint would require determining the preclusive effect of the state court judgment." *Id.* And that in turn would "require determining whether the judgment was rendered in violation of the discharge injunction—the question presented by the Counterclaim, which [was] not before the Court." *Id.* So, the Court

was compelled to deny the summary judgment motions and proceed to trial on both the Adversary Complaint and Counterclaim. *Id*.[3]

### *Evidence and Testimony at Trial*

Both Raymond, on behalf of Karam, and Lane testified at trial. Raymond's testimony essentially tracked the allegations of the Florida Complaint, a copy of which was admitted into evidence. Adv. ECF No. 45-2 at 21-30; Adv. ECF No. 52 at 7-8, 43-44. He testified that Karam did not have knowledge of Lane's bankruptcy case until after it obtained the Default Judgment. Adv. ECF No. 52 at 37. This testimony was unrebutted.

Lane testified that he received the Florida Complaint. *Id*. at 60-61. When asked why he did not respond to the lawsuit, he said that he didn't know exactly what it was, that he tried to get an attorney but was turned down, and he didn't know how to fight something in another state. *Id*. at 61.

### *Analysis*

### *A. The Counterclaim – Violation of the Discharge Injunction*

Before determining the preclusive effect of the Default Judgment, the Court must decide whether the judgment was rendered in violation of the discharge injunction, the issue presented by Lane's Counterclaim.

Section 524 provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). "The discharge injunction

---

[3]Because there were no findings of fact in the Default Judgment, it is necessary to examine the Florida Complaint which was not part of the record at the summary judgment stage in this proceeding. *See Caton v. Trudeau (In re Caton)*, 157 F.3d 1026, 1029 (5th Cir. 1998) (bankruptcy court may review state court complaint to determine issues decided by state court when rendering default judgment).

must be enforced if it is to provide any meaningful protection to debtors." *Fauser v. Green Tree Servicing, LLC (In re Fauser)*, 545 B.R. 907, 912 (Bankr. S.D. Tex. 2016). To be liable for a willful violation of § 524(a)(2), "the offending creditor must '(1) know the injunction has been entered, and (2) intend[ ] the actions that violate it.'" *Id*.

Lane received his discharge on September 11, 2019. ECF No. 24. Karam filed the Florida Complaint post-discharge, on October 3, 2019. Adv. ECF No. 45-2 at 21-30. But debts that are not listed or scheduled in time to permit timely filing of proofs of claim or requests to determine dischargeability under § 523 (a)(2), (a)(4) or (a)(6), are not discharged, unless the creditor had notice or actual knowledge of the bankruptcy. 11 U.S.C. § 523(a)(3). Lane did not list Karam in his original bankruptcy schedules or matrix. ECF Nos. 4, 12. And no evidence was presented (despite Lane's allegation) to show that Karam was aware of the bankruptcy until after the Default Judgment was entered. Consequently, the debt was not discharged by the Discharge Order, and the subsequently filed Florida Complaint did not violate the § 524(a)(2) discharge injunction. Thus, Lane is not entitled to relief on the Counterclaim and it must be dismissed.

### B. The Complaint – Dischargeability of Debt

Karam asserts that the debt established by the Default Judgment meets the requirements of § 523(a)(2), (4) and (6). Because the Default Judgment sets forth the amount of the debt, the only question is whether issue preclusion, also known as collateral estoppel, applies to make the debt nondischargeable. The party asserting collateral estoppel bears the burden of proving it applies. *Campbell v. City of Indianola*, 117 F. Supp. 3d 854, 864-65 (N.D. Miss. 2015). Karam has proved that collateral estoppel applies here.

"A bankruptcy court may apply collateral estoppel in a dischargeability proceeding to preclude relitigation of state court findings that are relevant to dischargeability." *Gupta v. E. Idaho*

*Tumor Inst., Inc. (In re Gupta)*, 394 F.3d 347, 349 (5th Cir. 2004) (citing *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997)). "When giving preclusive effect to a state court judgment, th[e federal] court must apply the issue preclusion rules of that state." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (citing *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 601 (5th Cir. 1998)); *In re Neil*, 665 B.R. 859, 862 (Bankr. S.D. Fla. 2024) ("When applying collateral estoppel in the context of a Florida state court judgment, the Florida law of collateral estoppel applies." (quoting *Hernandez v. Nunez (In re Nunez)*, 400 B.R. 869, 875 (Bankr. S.D. Fla. 2008))).

"The essential elements of collateral estoppel in Florida are (1) that the parties are identical; (2) that the issues are identical; (3) that the matter was fully litigated; and (4) determined in a contest which results in a final decision of a court of competent jurisdiction." *Usalliance, Fed. Credit Union v. M/Y Pure CIN*, No. 8:23-cv-1630-TGW, 2023 WL 9063655, at *4 (M.D. Fla. Nov. 29, 2023) (citing *Harris v. Jayo (In re Harris)*, 3 F.4th 1339, 1345 (11th Cir. 2021)). "Some cases, however, add a 'critical and necessary' element." *In re Harris*, 3 F.4th at 1345. *See, e.g.*, *Crowley Mar. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 931 F.3d 1112, 1126 (11th Cir. 2019) (To apply issue preclusion under Florida law, "an identical issue must be presented in a prior proceeding; the issue must have been a critical and necessary part of the prior determination; there must have been a full and fair opportunity to litigate that issue; the parties in the two proceedings must be identical; and the issues must have been actually litigated.").[4]

---

[4] Another court used a slightly different variation of the elements:

Under Florida law, for the Default Judgment to have preclusive effect, the following elements must be established: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case; and (4) the prior determination of the issue must have been a critical and necessary part of the judgment in the earlier decision.

"Under Florida law, even [a] pure default judgment, entered when there is no participation by the defendant, is sufficient to satisfy the 'actually litigated' element of collateral estoppel." *In re Neil*, 665 B.R. 859, 862 (Bankr. S.D. Fla. 2024) (quoting *In re Nunez*, 400 B.R. at 875 (internal quotation marks omitted); *see also Lasky v. Itzler (In re Itzler)*, 247 B.R. 546, 554 (Bankr. S.D. Fla. 2000) ("The fact that Itzler did not participate at all in the state court action does not change the fact that the issue of fraud was 'fully litigated' under Florida collateral estoppel principles.").

Also, "Florida law instructs that a default establishes the truth of all allegations in the complaint." *Howard Alts., Inc. v. Bentov (In re Bentov)*, 514 B.R. 907, 914 (Bankr. S.D. Fla. 2014) ("In this Court's view it is wrong and illogical to say that a court cannot determine which count forms the basis for a default judgment, because when a judgment stems from a default, each count is proven."); *see also In re Itzler*, 247 B.R. at 554 ("The dicta in *Perez* persuades this Court that every allegation in the state court complaint, including the Laskys' fraud claim, was conclusively established as true by entry of the default judgment.").

Because the Florida Court did not make specific findings of fact, a review of the Florida Complaint is necessary to determine the preclusive effective of the Default Judgment.[5] Karam requested treble damages in Count I (Civil Theft) of the Florida Complaint. And treble damages under the civil theft statutes are considered liquidated damages under Florida law. *Diaz v. Calvo*, 251 So. 3d 260, 261 (Fla. Dist. Ct. App. 2018). No treble damages were requested in the other two counts of the Florida Complaint. Since the Default Judgment awards treble damages, the civil theft count is critical and necessary to the judgment.[6] *See Herbstein v. Bruetman (In re Bruetman)*, 259

---

*Gutierrez v. Pena (In re Pena)*, 619 B.R. 779, 782 (Bankr. S.D. Fla. 2020) (citing *St. Laurent v. Ambrose* (*In re St. Laurent*), 991 F.2d 672, 676 (11th Cir. 1993)).

[5] *See infra* note 3.

[6] Defaulting party only admits entitlement to liquidated damages. *Diaz*, 251 So. 3d at 261.

B.R. 649, 664 (Bankr. N.D. Ill. 2001) (where only one of five counts in state court complaint sought treble damages and treble damages were clearly awarded by default judgment, bankruptcy court held that state court necessarily decided in plaintiff's favor on count requesting treble damages).

In pertinent part, Florida's civil theft statute provides that "(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) Deprive the other person of a right to the property or a benefit from the property." Fla. Stat. Ann. § 812.014. "Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of [812.014] has a cause of action for threefold the actual damages sustained . . . ." Fla. Stat. Ann. § 772.11.

Larceny under § 523(a)(4) is "(1) the fraudulent and wrongful taking away of the property of another with (2) the intent to convert it to the taker's use and with the intent to permanently deprive that owner of such property." *A/C Supply Inc. v. Botsay (In re Botsay)*, No. 20-51440-KMS, Adv. No. 21-06001-KMS, 2022 WL 106580, at *4 (Bankr. S.D. Miss. Jan. 11, 2022) (quoting *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 350 (5th Cir. 2017)).

Courts have held that the elements required for civil theft under Florida law are sufficiently identical to the elements required for larceny under § 523(a)(4). *See Smith v. Williams (In re Smith)*, 253 F.3d 703, at *2 (5th Cir. 2001) ("[W]e find a conviction under Florida's civil theft statute satisfies the requirements for nondischargeability under § 523(a)(4)"); *Petty v. Petty (In re Petty)*, 333 B.R. 472, 479-80 (Bankr. M.D. Fla. 2005) (civil theft claim was fully adjudicated in state court, was entitled to collateral estoppel effect, and was nondischargeable under § 523(a)(4));

*Parker v. Padgett (In re Padgett)*, 235 B.R. 660, 663 (Bankr. M.D. Fla. 1999) ("the state court findings of liability under Florida Statutes § 812.014 and § 772.11 satisfy the requirements of Section 523(a)(4)"); *White v. Milich (In re Milich)*, No. 12-16599-EPK, Adv. No. 12-1438-EPK, 2013 WL 4835102, at *4 (Bankr. S.D. Fla. Sept. 10, 2013) ("The State Court also ruled in favor of the Plaintiffs on a claim of civil theft under § 772.11, Fla. Stat. That claim, as well, is sufficiently identical to the Plaintiffs' larceny claim in this case under § 523(a)(4) to satisfy the first element of collateral estoppel.").

Here, the elements of collateral estoppel under Florida law are met. The parties are identical, the elements for a finding of civil theft satisfy the elements § 523(a)(4) for larceny, the Default Judgment meets the "actually litigated" requirement of Florida law, and the civil theft count is critical and necessary to the judgment because of the award of treble damages by the Florida Court, undoubtedly a court of competent jurisdiction.

As a result, the Court finds that the Default Judgment is entitled to preclusive effect and the debt should be excepted from discharge under § 523(a)(4). When the underlying debt is non-dischargeable under § 523(a)(4), the related attorneys' fees are also nondischargeable. *See Helvetia Asset Recovery, Inc. v. Kahn (In re Kahn)*, 533 B.R. 576, 587-88 (Bankr. W.D. Tex. 2015). So are treble damages. *McCallum v. Pixley (In re Pixley)*, 504 B.R. 852, 870 (Bankr. E.D. Mich. 2014) (citing *Cohen v. de la Cruz*, 523 U.S. 213 (1998)) (entire amount of state court judgment including treble damages was nondischargeable); *(In re Padgett)*, 235 B.R. at 664 (debt to be excepted from discharge was entire trebled judgment for civil theft).

It is not necessary to analyze whether the Default Judgment is nondischargeable under § 523(a)(2)(A) or (6).[7] And, because the Court has determined that issue preclusion applies to the Default Judgment, it is not necessary to make further findings or conclusions.

### *Order*

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Default Judgment in favor of Karam Family, LLC and against Christopher Lane in the amount of $821,771.44, with interest, is excepted from discharge under 11 U.S.C. § 523(a)(4).

**IT IS FURTHER ORDERED AND ADJUDGED** that Lane's Counterclaim against Karam is dismissed with prejudice.

**IT IS FURTHER ORDERED** that a separate final judgment shall be entered.

*##END OF ORDER##*

---

[7] However, courts have recognized that a civil theft finding satisfies the standard for willful and malicious under § 523(a)(6). *See, e.g., Flemm v. Trexler (In re Trexler)*, 528 B.R. 842, 851 (Bankr. N.D. Ga. 2015) ("[T]he elements of civil theft [under Florida law] are sufficiently identical to those for willful and malicious injury under Section 523(a)(6) to support the use of collateral estoppel."); *Sunco Sales, Inc. v. Latch (In re Latch)*, 820 F.2d 1163, 1165-66 (11th Cir. 1987) (conviction for Florida civil theft satisfied willful and malicious injury requirements of section 523(a)(6)); *Maximus Int'l Trading Corp. v. Arguez (In re Arguez)*, 134 B.R. 55, 59 (Bankr. S.D. Fla. 1991) (prior court decision finding violation of Florida's civil theft statute requires Bankruptcy Court to give collateral estoppel effect to factual finding under § 523(a)(6), citing *In re Latch*, 820 F.2d 1163 (11th Cir. 1987)).